Filed 4/10/14  P. v. Smith CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GLEN WILLARD SMITH,<br><br>    Defendant and Appellant. | E057886<br><br>(Super.Ct.No. SWF1101523)<br><br>**OPINION** |

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer, Judge.  Affirmed

David L. Kelly, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Lise S. Jacobson, and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

A jury found defendant and appellant Glen Willard Smith guilty of being a felon in possession of a firearm under Penal Code[1] section 12021, subdivision (a)(1) (counts 1 and 3); being a felon in possession of ammunition under section 12316, subdivision (b)(1) (count 5); possession of methamphetamine for sale under Health and Safety Code section 11378 (count 6); and possession of hydrocodone under Health and Safety Code section 11350, subdivision (a) (count 7).[2] Thereafter, defendant admitted that he had suffered eight prior strikes under sections 667, subdivisions (c) through (e)(2)(A) and 1170.12, subdivision (e)(2)(A).

The trial court sentenced defendant to an indeterminate term of 25 years to life for count 6. The court also imposed a concurrent 25 years to life for count 1, but stayed the remaining counts.

On appeal, defendant contends that the trial court erred in allowing testimony from an expert witness on whether the methamphetamine was possessed for purposes of sale, and that any such error was not harmless. For the reasons set forth below, we disagree with defendant and affirm the judgment.

---

**1** All statutory references are to the Penal Code unless otherwise specified.
**2** Defendant was jointly tried with co-defendant Susan Ewalt. She is not a party to this appeal.

II

STATEMENT OF FACTS

On June 16, 2011, Riverside County Deputy Sheriff Joseph Sinz went to a residence in an unincorporated area of Lake Elsinore. When defendant answered the door, Deputy Sinz asked him and another male occupant to have a seat on the front porch. Co-defendant Susan Ewalt, who identified herself as Debbie Moses, was also inside the house. As proof of her identity, she provided a driver's license. The picture on the license, however, did not match her face. Ewalt admitted it was not her license.

Inside the master bedroom, Deputy Sinz located the following items: (1) three or four Vicodin or hydrocodone tablets, two of which were in a clear plastic baggie with heart shapes on it, and some marijuana in a jewelry box on the nightstand next to the bed; (2) several live .22-caliber rounds and an earring in a porcelain bowl in the bathroom; (3) several additional live .22-caliber rounds in the bathroom sink; (4) two digital scales, a Tupperware containing packaging and several white tablets, several prescription pill bottles, additional live .22-caliber rounds, a three-by-six inch baggie containing methamphetamine, an ATM card in Ewalt's name, and a methamphetamine pipe in one of the dressers; (5) a Tupperware containing unused clear plastic baggies, which were roughly one-by-one inch and were imprinted with a heart shape on them; (6) 11 Vicodin tablets and marijuana in a small jewelry box on the bathroom sink; (7) additional clear plastic baggies on the bathroom counter; (8) another baggie of marijuana in the master bedroom; (9) approximately 50 clear, unused baggies, one of which contained a white crystalline substance, and a hand-held lighter under one of the pillows in the master

3

bedroom; (10) two used methamphetamine pipes, a .22-caliber rifle, and a 20-gauge shotgun in the closet; and (11) another methamphetamine pipe in an octagonal box. One of the baggies of methamphetamine weighed 1 gram; the other baggie weighed .4 grams. A Department of Justice criminalist determined that the content of one baggie was .74 grams without packaging; and the other contained less than .1 gram, which is considered residue. A total of 45 Vicodin tablets were found.

There was no evidence that anyone was living in either of the other two bedrooms in the house. Mail was found with defendant's name and the house's address on it. Mail with Ewalt's name listed a different address. Defendant stipulated that he had lived at the house since 2006.

Sergeant Aaron Kent of the Riverside County Sheriff's Department testified as an expert on drug sales. Based on the items discovered by Deputy Sinz, Sergeant Kent opined that the methamphetamine found at the house was possessed for the purposes of sale.

Defendant stipulated that he had previously been convicted of a felony, which prevented him from possessing firearms or ammunition.

The defense called Riverside County Deputy Sheriff Edward Trias. He testified that when the deputies announced their presence at the door, three persons – two men and a woman – scattered out the back door. The deputy apprehended one of the men but the other two escaped.

4

# III

## ANALYSIS

Defendant contends that "the court abused its discretion and violated [defendant's] constitutional rights to trial by jury and due process of law by allowing Sergeant Kent to testify that the methamphetamine here was possessed for sale."

Evidence Code section 801 sets out the primary guideline for determining what constitutes appropriate expert opinion testimony: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . ."

"[T]he admissibility of expert opinion is a question of degree. The jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission; if that were the test, little expert opinion testimony would ever be heard. Instead, the statute declares that even if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would 'assist' the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when 'the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness' [citation]." (*People v. McDonald* (1984) 37 Cal.3d 351, 367, overruled on another ground by *People v. Mendoza* (2000) 23 Cal.4th 896, 914.) The trial court has discretion to determine whether an opinion passes this test. (*People v. Bolin* (1998) 18 Cal.4th 297, 321-322.)

It has long been recognized that experts can assist juries in understanding the physical evidence of a crime. (*People v. Newman* (1971) 5 Cal.3d 48, 53 [opinion that narcotics are held for purposes of sale based upon such matters as quantity, packaging and normal use of an individual], disapproved on another ground in *People v. Daniels* (1975) 14 Cal.3d 857, 862; *People v. Valdez* (1997) 58 Cal.App.4th 494, 506 [expert testimony on the "culture, habits, and psychology" of criminal street gangs]; *People v. Brown* (1981) 116 Cal.App.3d 820, 828 [a "runner" is a middleman between a seller and a buyer of drugs]; *People v. Lopez* (1994) 21 Cal.App.4th 1551, 1554-1555 [various roles in methamphetamine laboratory].) Opinion testimony "is not objectionable because it embraces the ultimate issue to be decided by the trier of fact," as long as it is otherwise admissible. (Evid. Code, § 805.) Rarely is expert opinion objectionable for invading the province or usurping the function of the jury or otherwise taking over the jury's role. Instead, California criminal juries are usually instructed, as was the jury here, that they are the exclusive judges of the believability of a witness (§ 1127), that they are not bound by an expert's opinion, but should give it the weight it deserves based on the underlying reasoning (§ 1127b). (CALCRIM Nos. 332, 333.) They are further told that they should consider whether a hypothetical question incorporated facts that the jury later found to be unproved. (*People v. McDonald, supra,* 37 Cal.3d 351, 370-371.)

Applying these principles, Sergeant Kent was properly allowed to testify that defendant possessed methamphetamine for sale. The mere fact that the officer rendered this opinion based on the facts of the instant case, rather than on the basis of some hypothetical set of facts, does not alter this conclusion.

6

Nonetheless, even if the trial court erred in admitting Sergeant Kent's expert testimony, any error was harmless. "The erroneous admission of expert testimony only warrants reversal if 'it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error.'" (*People v. Prieto* (2003) 30 Cal.4th 226, 247, citing *People v. Watson* (1956) 46 Cal.2d 818, 836; see also *People v. Pearson* (2013) 56 Cal.4th 393, 446.) Assuming error, it was a matter of state law and not so substantial to render the trial fundamentally unfair. (*People v. Spence* (2012) 212 Cal.App.4th 478, 511.) It appears that trial counsel agreed – during trial, she objected to Sergeant Kent's testimony solely on the stated grounds that the prosecution had failed to set a sufficient foundation. She stated, on two occasions, "Objection. Lack of foundation."

Even if the questions to Sergeant Kent were inarticulately framed as to encompass his actual intent, there is no reason to believe the jury found defendant guilty on this basis. Here, there is no question that the prosecutor could have asked a lengthy hypothetical based on the facts in this case. Such a hypothetical would not have had to disguise the fact that it was based on those facts. The only potential problems with the instant question, therefore, was that the prosecutor did not list out the lengthy hypothetical facts upon which it was based and using defendant's real name. There is no reason to believe that the jury would have reached a different conclusion had the prosecutor referred to the hypothetical persons as "Defendant A" and "Defendant B."

Notably, in this case, the trial court instructed the jury not only to disregard any expert opinion that was based on an unsupported assumption of facts, but also that it was

7

up to the jury to determine whether the facts underlying a hypothetical question had to be proved:

"Witnesses were allowed to testify as experts and to give opinions. You must consider the opinions, but you are not required to accept (it/them) as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate. You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence.

"An expert witness may be asked a hypothetical question. A hypothetical question asks the witness to assume certain facts are true and to give an opinion based on the assumed facts. It is up to you to decide whether an assumed fact has been proved. If you conclude that an assumed fact is not true, consider the effect of the expert's reliance on that fact in evaluating the expert's opinion." (CALCRIM No. 332; see *People v. Vang* (2011) 52 Cal.4th 1038, 1050.)

Under these circumstances, the jury still had to find that the items found during the search belonged to defendant, and that Sergeant Kent's reasons for believing that these items were possessed for sale were credible. Sergeant Kent never purported to have any personal knowledge about these facts. To the extent that his testimony was objectionable

8

because the jury was equally equipped to make the ultimate determination, it is not reasonably probable that a result more favorable to defendant would have been reached as the jury would have reached the same conclusion based on the facts of this case. Accordingly, any alleged error was harmless.

## IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

9