Filed 3/25/26  P. v. Puerto-DeEspinosa CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KARIN JULISSA PUERTO-<br>DeESPINOSA,<br><br>        Defendant and Appellant. | A169796<br><br>(San Mateo County<br>Super. Ct. No. 19SF011522B) |

Appellant Karin Puerto-DeEspinosa was convicted by a jury of receiving stolen property worth over $950, a felony.  (Pen. Code, § 496, subd. (a).)  At sentencing, the trial court reduced her conviction to a misdemeanor and placed her on probation.  Appellant now contends the judgment must be reversed due to the erroneous admission of expert evidence at trial.  We affirm the judgment.

**BACKGROUND**

In February 2019, California Highway Patrol Officer Matthew Masciorini executed a search warrant at a residence in Pinole in connection with his investigation of a suspected theft of a laptop by Lauren Torres.  The residence was laid out like a single family home, in that it had common areas, a hall leading to bedrooms, and another bedroom in the back of the house.  Torres was present during the search, as was appellant and her husband

1

Daniel Ocampo-Espinosa.  Based on his contact with those individuals and his observations in the home, Masciorini concluded that appellant and Ocampo-Espinosa lived there and occupied the back bedroom.

Inside appellant's bedroom, Masciorini found multiple shelves stocked with large quantities of items that one "would find at a retail CVS or Rite Aid," two large garbage bags filled with jackets, five designer brand purses hanging on a wall, and $4,400 in cash.  Additional merchandise was found in common areas of the home, including approximately six plastic containers filled with items similar to those stored on the shelves in appellant's bedroom, 10 laptop computers, and a Trader Joe's bag filled with additional items.  Masciorini also found approximately 20 cardboard boxes, a printer and packing material.  Some of the boxes had been packed with items and affixed with shipping labels naming appellant as the sender.

Isabel Marquez, an organized retail crime manager from CVS, was called to the Pinole house to assist Masciorini with his investigation.  The situation reminded Marquez of things she had seen when she had assisted law enforcement officers executing "fencing warrants."  For example, a large box was packed with one type of "high theft" item and ready to be shipped.  Marquez inventoried more than 10,000 CVS items, collectively valued at more than $100,000.

A few months later, appellant was implicated in another law enforcement investigation.  On April 3, 2019, Detective Chris Laughlin of the San Mateo County Sheriff's Department conducted a traffic stop of a vehicle occupied by Lavett Williams and Erisha Johnson.  The vehicle contained multiple bags that were full of retail items.  Laughlin observed security tags for CVS and Walgreens, and a store "rack" with a Walgreens sticker on it.  There were approximately 1,000 separate items in the car, all of which

2

appeared to be in new condition. During the ensuing investigation, Laughlin determined the items were stolen from CVS and Walgreens.

Laughlin searched the contents of Williams's and Johnson's cell phones, which contained evidence connecting them to appellant and Ocampo-Espinosa. Between February and April 2019, Johnson exchanged more than 1,000 messages with a phone that was identified as belonging to appellant. During that same period, Johnson exchanged 95 messages with Ocampo-Espinosa. The messages established a common pattern: A photograph of a retail items was sent to Johnson; Johnson inquired, "How much"; and the responder provided a dollar amount. Williams had also exchanged close to 600 messages with appellant, pursuant to which photos of merchandise were sent and costs discussed. And on April 3, 2019, Johnson had sent appellant a message that stated, " 'was stopped by police,' " followed by the message, " 'jail.' "

In September 2019, Laughlin arrested appellant and Ocampo-Espinosa, at the Pinole residence. On appellant's cellphone, Laughlin found hundreds of photos of retail items superimposed with dollar amounts on them that were similar to photographs found on Johnson's and Williams's phones. Similar evidence was on Ocampo-Espinosa's phone, which also contained contact information for people known to law enforcement because of their fencing activities.

Appellant and Ocampo-Espinosa were jointly charged with receiving stolen property exceeding $950 (Pen. Code, § 496, subd.(a), count two). Ocampo-Espinosa was also charged with organized retail theft (Pen. Code, § 490.4, subd. (a), count one). The pair was tried together in August 2023. On August 24, the jury found them guilty as charged.

3

Appellant was sentenced on December 15, 2023.  The court reduced her conviction to a misdemeanor and sentenced her to one-year probation with terms and conditions.

## DISCUSSION

Appellant contends the trial court committed reversible errors by permitting the prosecution to elicit improper expert opinion testimony from Sergeant Masciorini and Detective Laughlin.  A witness testifying as an expert may provide testimony in the form of an opinion as to "a subject that is sufficiently beyond common experience" so as to "assist the trier of fact." (Evid. Code, § 801, subd. (a).)  Trial court rulings regarding the admissibility of expert testimony are reviewed for abuse of discretion.  (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266*; People v. Rodriguez* (2014) 58 Cal.4th 587, 639; *People v. McDowell* (2012) 54 Cal.4th 395, 426.)

### I.  Masciorini's Testimony

In seeking reversal of the judgment, appellant focuses primarily on Laughlin's opinions, but she also briefly objects to two statements Masciorini made while testifying about the search he conducted at appellant's home.

First, after Masciorini described the cardboard boxes that were seized from the residence, the prosecutor asked whether "the way that the merchandise was in those boxes" was "significant" to him.  Masciorini's initial response—that the items were being prepared to be shipped—was stricken pursuant to an objection that it was speculative.  But he then testified that based on his training and experience, "the way that the items were in the cardboard boxes" indicated to him "that they were stolen items, and somebody was fencing them out to another purchaser."  Later, Masciorini testified that, in his opinion, the merchandise he found at the home "was stolen merchandise being sold and shipped out from the residence."  Defense

4

counsel's objection to this statement as speculative and an improper opinion was overruled.

Appellant contends Masciorini's statements constituted improper expert opinions that a crime was committed.  (Citing *People v. Torres* (1995) 33 Cal.App.4th 37, 47 (*Torres*).)  The People disagree.  They contend Masciorini's testimony on these issues was admissible, either as lay opinion or expert testimony.  Appellant does not respond to the People's arguments in her reply brief.

" 'A lay witness may testify to an opinion if it is rationally based on the witness's perception and if it is helpful to a clear understanding of his testimony.' " (*People v. Becerrada* (2017) 2 Cal.5th 1009, 1032, citing Evid. Code, § 800; see also *People v. Farnam* (2002) 28 Cal.4th 107, 153.)  Masciorini's testimony that the merchandise he observed was being sold and shipped out of the residence could reasonably be construed as lay testimony based on his perceptions at the scene.  However, his opinion that the merchandise was stolen and being fenced went beyond describing what he perceived, as it called on his unique experience as a police officer.

To be admissible as an expert opinion, the witness's testimony must be sufficiently beyond the common experience of the trier of fact.  (*People v. Jones* (2012) 54 Cal.4th 1, 60.)  "That is not to say, however, that the jury need be wholly ignorant of the subject matter of the expert opinion in order for it to be admissible.  [Citation.]  Rather, expert opinion testimony ' "will be excluded only when it would add *nothing at all* to the jury's common fund of information, i.e., when 'the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness.' " ' " (*Ibid*.)  Here, the trial court could have, without abusing its discretion, admitted Masciorini's opinion on the

5

significance of the merchandise he observed as expert testimony, concluding that indicia of a fencing operation were sufficiently beyond the common experience of the jury to make Masciorini's opinion helpful to them in assessing the evidence.

*Torres, supra*, 33 Cal.App.4th 37, cited by appellant, does not alter our conclusion. There, the trial court erred by permitting an expert on the subject of criminal gangs to testify regarding the meaning of the terms robbery and extortion and to give his opinion that the crimes committed in that case were robberies. (*Id*. at pp. 47–48.) The testimony was improper, the appellate court found, because (1) the jury did not need an expert to determine whether a crime as commonplace as robbery had occurred and (2) opinions regarding the guilt or innocence of a defendant "are of no assistance to the trier of fact," who is "as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt." (*Id*. at p. 47.) In this case, by contrast, the court could have found that expert testimony about the indicia of a fencing operation would be useful to the jury. Moreover, Masciorini did not offer any opinion about whether these defendants were guilty, but instead called on his experience as a police officer to explain what the evidence showed.

## II. Laughlin's Testimony

Detective Laughlin testified primarily as a percipient witness. He recounted the traffic stop of Johnson and Williams and the ensuing investigation. He testified about arresting appellant and Ocampo-Espinosa at their home in September 2019, and the search of their cellphones. Laughlin also testified about his personal knowledge that people listed as contacts in Ocampo-Espinosa's phone operated fencing operations. Appellant does not challenge any of this testimony.

Near the end of Laughlin's direct examination, he testified about the features of an organized retail crime operation, based on his training and experience investigating those types of crimes. In that context, he explained the significance of the relationship between boosters and fences: boosters steal retail items from various locations; they meet up with a fence and are paid cash for the items; and the fence is the "boss" of the relationship, influencing what the boosters steal and how they get paid. After eliciting this foundational testimony, the prosecutor asked for Laughlin to be designated as an expert "in the area of organized retail crime." Neither defendant disputed Laughlin's expertise, but one defense counsel objected that Laughlin's opinion was irrelevant, as this was "a question squarely for the jury." Nevertheless, the court designated Laughlin as an expert.

Laughlin then testified that he had formed an opinion, based on evidence gathered during his investigation, as to whether defendants were engaged in organized retail crime between February and April 2019. Concluding his direct examination, Laughlin testified: "The opinion that I came to was that both defendants were actively working as a fence of stolen property for retail merchandise. And that boosters Lavett Williams and Erisha Johnson were working for them."

Appellant contends that Laughlin's expert opinions were improper and that admitting his expert testimony constituted reversible error. We conclude that, while some expert testimony about organized retail crime was proper, the trial court likely abused its discretion by permitting Laughlin to offer his opinion that appellant was actively working as a fence of stolen property. However, any such error was harmless on this record.

The " 'decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common

knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact.' " (*People v. Brown* (1981) 116 Cal.App.3d 820, 827 (*Brown*); accord *People v. Harvey* (1991) 233 Cal.App.3d 1206, 1227 (*Harvey*).) Here, the trial court could have concluded reasonably that the inner workings of an organized retail crime operation were beyond the common experience of the jurors and, given Laughlin's undisputed expertise on the subject, his opinion about the nature of the defendants' relationship with Johnson and Williams would have assisted the jury in evaluating the trial evidence.

Appellant contends, however, that Laughlin's specific testimony about whether the defendants were engaged in organized retail crime was an improper opinion about the defendants' guilt. In contrast to the expert witness in *Torres*, *supra*, 33 Cal.App.4th at pp. 47–48, Detective Laughlin did not define any crime, nor did he offer the opinion that this defendant committed a specific crime. However, his opinion that defendants were actively fencing stolen property implied that defendant was guilty of the charged offense.

Appellant relies on *Brown*, *supra*, 116 Cal.App.3d 820, an appeal following the defendant's conviction for selling heroin. (*Id.* at p. 832.) The defendant argued the trial court erred by permitting a police inspector to offer his opinion at trial that the defendant had been acting as a "runner" for a second individual who sold the heroin to an undercover officer. (*Id.* at pp. 829, 827.) The *Brown* court found that officers with knowledge of "narcotic traffic" were properly permitted to discuss the meaning of various terms, including the term " 'runner.' " (*Id.* at p. 828.) However, the inspector's additional testimony that the defendant was working as a runner

during the incident was "tantamount to an opinion that Brown was guilty of the charged crime" because the jury had been instructed that a runner, as that term was defined by the officers, was just as guilty as the person who actually made the sale.  (*Id*. at p. 829.)  In those circumstances, "the jury were as qualified as the witness" to determine whether the defendant was working as a runner.  (*Ibid*.)

Appellant insists that *Brown* governs here because Laughlin "opined that appellant guiltily engaged in organized retail theft," which was tantamount to an opinion that she committed the charged offense.  The People counter with *Harvey, supra*, 233 Cal.App.3d 1206, which involved co-conspirators convicted of drug-related offenses.  On appeal, several defendants argued the trial court erroneously admitted testimony by a narcotics agent regarding "the nature of various transactions that he and other officers observed, as well as the various roles and levels of culpability manifested by each defendant."  (*Id*. at p. 1226.)  Rejecting this claim, the *Harvey* court found that the defendants failed to show the trial court abused its discretion because the subject matter of the agent's testimony "was sufficiently beyond the common expertise of the trier of fact to render expert testimony not only helpful but necessary for an understanding of the meaning and import of various actions."  (*Id*. at p. 1228.)  Here, the trial court could have concluded similarly that the subject of "organized retail crime" was sufficiently beyond the common experience of a typical juror to make Laughlin's expert testimony helpful.

However, *Harvey* is distinguishable.  The case involved multiple defendants charged with performing different roles in a complex criminal conspiracy (*Harvey, supra*, 233 Cal.App.3d at pp. 1209, 1226), whereas here the jury did not have to determine whether appellant was linked to a larger

9

criminal operation. (See *People v. Covarrubias* (2011) 202 Cal.App.4th 1, 18 (*Covarrubias*) [expert testimony regarding structure of drug trafficking organization should not have been admitted in case charging defendant with unlawful transportation of marijuana; distinguishing *Harvey*].) Moreover, *Harvey* was tried before a judge rather than a jury; the agent's expert opinions were offered in response to hypotheticals; and in offering those opinions, the agent testified that various activities were either consistent with or indicative of criminal activity. (*Harvey*, at p. 1226.) These circumstances reduced the likelihood that the trier of fact construed the expert's testimony as an opinion about whether defendants were guilty of the charged offenses. In this case, by contrast, Detective Laughlin's testimony that the defendants "were actively working as a fence of stolen property" would likely have been construed by the jury as an expert opinion that appellant knowingly received stolen property.

Assuming the trial court abused its discretion in admitting Laughlin's opinion, the error was harmless because it is not reasonably probable that the outcome of this case would have been more favorable to appellant had the testimony been excluded. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Leonard* (2014) 228 Cal.App.4th 465, 493 & fn. 10 (*Leonard*) [erroneous admission of expert testimony reviewed under *Watson*]; *Covarrubias*, *supra*, 202 Cal.App.4th at pp. 21–22 [same].)[1]

---

[1] Appellant attempts to invoke the heightened standard of prejudice governing federal constitutional errors. " 'To prove a deprivation of federal due process rights, [a defendant] must satisfy a high constitutional standard to show that the erroneous admission of evidence resulted in an unfair trial.' [Citation.] ' "The dispositive issue is . . . whether the trial court committed an error which rendered the trial 'so "arbitrary and fundamentally unfair" that it violated federal due process.' " ' " (*Covarrubias*, *supra*, 202 Cal.App.4th at

Detective Laughlin's opinion about the nature of the defendants' business operation was a minor aspect of his testimony, and Laughlin and other witnesses provided compelling evidence that, when considered as a whole, made the prosecution's case against appellant remarkably strong. Indeed, it appears appellant's trial counsel contested neither that the property was stolen nor that appellant had, with others, possessed it, but only the dollar value of the stolen merchandise that had come from San Mateo County stores. Furthermore, the jury was instructed pursuant to CALCRIM No. 332 that it was not required to credit Laughlin's expert opinion: "You must decide whether information on which the expert relied was true and accurate. [¶] You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence." Under these circumstances we conclude the "additional effect on the jury from the allegedly improper testimony, if any, was negligible." (*Leonard*, *supra*, 228 Cal.App.4th at p. 494 [detective's expert opinion that defendant was a certain type of pimp deemed harmless].)

Appellant contends that the admission of Laughlin's opinion was reversible error because the prosecution "prejudicially exploited" Laughlin's expertise during closing arguments. It is true that the prosecutor discussed Laughlin's expertise while addressing the elements of the organized retail theft charge, but this crime was alleged only against Ocampo-Espinosa, not against appellant. Even if that argument indirectly impacted appellant, the prosecutor's comments focused primarily on Laughlin's background and experience, which were undisputed. The prosecutor did not place particular

p. 20.) Appellant wholly fails to make this showing. (See *People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 [" 'Points "perfunctorily asserted without argument in support" are not properly raised' "].)

reliance on Laughlin's expertise as compared to the other extensive evidence that was discussed during closing arguments.

Appellant contends Laughlin's "improper opinions of guilt" must be deemed prejudicial under *Brown*, *supra*, 116 Cal.App.3d at p. 829. But the *Brown* court did not address whether the inspector's improper opinion in that case was prejudicial. It reversed the judgment due to a jury instruction error that reduced the prosecutor's burden of proof, which could not be deemed harmless in light of the whole record, including the improper opinion. (*Ibid.*) Here, the admission of Laughlin's discrete opinion at the end of his direct testimony was harmless, as the other evidence of appellant's criminal conduct was overwhelming.

## DISPOSITION

The judgment is affirmed.

TUCHER, P. J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*People v. Puerto-DeEspinosa* (A169796)