[No. B080379. Second Dist., Div. Seven. Mar. 15, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDDY MORENO TORRES, Defendant and Appellant.

## COUNSEL

Gary Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Hartner and Beverly K. Falk, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—Defendant appeals from the judgment following his conviction of one count of first degree murder with robbery as a special circumstance and two counts of attempted robbery. Defendant argues his convictions should be reversed because, as to each victim, he committed at most the crime of attempted extortion, not attempted robbery, and he was the victim of misconduct by the prosecutor and ineffective assistance of counsel. We reject these arguments and affirm the judgment.

### FACTS AND PROCEEDINGS BELOW

Defendant was a "rent" collector for the 18th Street gang in Los Angeles. His duty was to collect payments, referred to by the gang as "rent," from drug dealers in the gang's territory for the privilege of doing business there. As we describe more fully below, one night defendant's rent collecting activities went too far and he shot and killed Jose Argueta, one of the drug dealers from whom he was attempting to collect rent. The same night, defendant also attempted to obtain money at gunpoint from Jose Gonzales, who was not a drug dealer, but simply a passerby on his way to his car.

At the trial Officer John Thacker, a member of the Los Angeles Police Department's gang unit, was allowed to testify without objection as to his interpretation of the crimes of robbery and extortion. He also testified, without objection, defendant had engaged in attempts to rob Argueta and Gonzales.

The jury found defendant guilty of the first degree murder of Argueta and found, as a special circumstance, the murder occurred in the perpetration of an attempted robbery. The jury also found defendant guilty of the attempted robbery of Argueta and Gonzales. Defendant was sentenced to life in prison without possibility of parole for the murder of Argueta and given additional sentences for the robberies and various enhancements.

Although we find counsel for defendant was deficient in permitting Officer Thacker to express opinions about the law, what crimes were committed, and defendant's guilt of those crimes, we conclude this deficiency did not affect the outcome of the trial and thus we affirm the judgment.

## DISCUSSION

### I. *A Witness May Not Express Opinions on the Definition of Crimes, Whether a Crime Has Been Committed, or on the Defendant's Guilt.*

Officer Thacker of the Los Angeles Police Department was an expert witness for the prosecution. He testified he was familiar with street gangs in general and the 18th Street gang in particular, and that defendant was a member of the 18th Street gang. He also testified he was familiar with the term "collecting rent" as used by members of the 18th Street gang. Asked what that term meant, Thacker testified, "[T]he individuals who want to come into their area and sell narcotics, they must pay a certain amount of rent to the 18th Street gang in order to sell their narcotics in that neighborhood."[1]

Thacker was then asked to describe how "collecting rent" worked. He responded: "[Certain gang members] are given a particular area. They are given responsibility of collecting money from the narcotics dealers in that particular area. That individual would then go out, confront these individuals and have [the dealers] pay that individual for the purpose for allowing them to sell narcotics in that neighborhood."

As to why the drug dealers would give money to the gang members, Thacker testified: "I can answer that by giving an example. If I were [dealing drugs], if somebody pointed a gun to me and said give me your money if you

---

[1] We doubt the gang members selected the term "collecting rent" based on their knowledge of English history. However, it is interesting to note the similarity between "collecting rent" as practiced by the 18th Street gang and "black-mail," meaning "black rents" as practiced by freebooting chiefs in the north of England and in Scotland in the 16th Century who collected tributes (rents) in the form of crops, work, goods or a metal baser than silver for protection from pillage. (Perkins & Boyce, Criminal Law (3d ed. 1982) 451; Lindgren, *Unraveling the Paradox of Blackmail* (1984) 84 Colum. L.Rev. 670, 674, fn. 24.)

want to deal here, I am going to kill you, I would do that, because I am afraid for my life, afraid for my safety. . . . It's a matter of staying alive. It's exactly the matter of staying alive."

On cross-examination, the following colloquy took place between defense counsel and Officer Thacker.

"Q. And this 'collecting rent,' would you describe that as basically extortion?

"A. Not entirely, no."

No error is assigned to the evidence up to this point. However, on redirect examination, without objection from defense counsel, the following colloquy took place between the prosecutor and Officer Thacker.

"Q. You just had a question which is, would you consider this 'collecting of rent' basically extortion. You said not exactly. How would you describe it?

"A. Well, I would describe it as a robbery. My definition of robbery is taking of someone's personal property through force or fear with the immediate danger of something happening to you. I know that is taking place. That is what happened in this particular case. Then when you get extortion, yes, that is happening also, but it's a two-fold issue.

"Q. What's extortion?

"A. Extortion is taking of somebody's personal property with a fear of a later threat against yourself.

"Q. In other words, if I have a gun on you right now and demand your money, what is that?

"A. It's a robbery."

■ On appeal, defendant contends a witness's opinion about the meaning of a statute is an improper subject of expert opinion and, therefore, it was improper for Officer Thacker to define the offenses of robbery and extortion for the jury. It was also improper, he contends, to allow the witness to testify a robbery "is what happened in this particular case" because this was an improper subject for opinion testimony and was the equivalent of expressing an opinion the defendant was guilty as charged. Defendant acknowledges his

counsel did not object to this testimony but argues in failing to object and ask for a curative instruction to the jury his trial attorney deprived him of the effective assistance of counsel. Leaving aside for the moment the issue of effective assistance of counsel, we agree with defendant the foregoing testimony was improper.

 Opinion testimony is generally *inadmissible* at trial. (Evid. Code, §§ 800, 801.) Opinion testimony may be admitted in circumstances where it will assist the jury to understand the evidence or a concept beyond common experience. Thus, expert opinion is admissible if it is "[r]elated to a subject that is sufficiently beyond common experience [and] would assist the trier of fact." (Evid. Code, § 801, subd. (a).) Expert opinion is not admissible if it consists of inferences and conclusions which can be drawn as easily and intelligently by the trier of fact as by the witness. (*In re Cheryl H.* (1984) 153 Cal.App.3d 1098, 1121 [200 Cal.Rptr. 789] [expert opinion about who molested child not admissible].) In an often quoted statement of the rule, Chief Justice Gibson of our Supreme Court explained: "[T]he decisive consideration in determining the admissibility of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (*People* v. *Cole* (1956) 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435].) As Judge Learned Hand explained, in more colorful language, expert opinion testimony must ordinarily relate to "certain propositions of general applicability, or laws of nature, which are not the heritage of the ordinary man whom the jury, like the Greek chorus, heroically shadow forth." (Hand, *Historical and Practical Considerations Regarding Expert Testimony* (1901) 15 Harv. L.Rev. 40, 55.)

With these principles in mind we turn to the opinions expressed by Officer Thacker in the case before us.

A. *A Witness May Not Express an Opinion as to the Definition of a Crime.*

 Early in our state's judicial history our Supreme Court held the definition of a statutory term is a matter of law on which the court should instruct the jury; it is not a subject for opinion testimony. (*People* v. *Carroll* (1889) 80 Cal. 153, 158 [22 P. 129]; *People* v. *Rose* (1890) 85 Cal. 378, 382 [24 P. 817]; *People* v. *Gosset* (1892) 93 Cal. 641, 645-646 [29 P. 246].) As an appellate court has more recently noted, "It is the court and not the

witness which must declare what the law is, it not being within the province of a witness, for example, to testify as to what constitutes larceny or burglary." (*People* v. *Clay* (1964) 227 Cal.App.2d 87, 98 [38 Cal.Rptr. 431, 100 A.L.R.2d 1421].)

There are two reasons why opinion evidence on the meaning of a statute is inadmissible. First, as noted in *People* v. *Carroll*, *supra*, 80 Cal. 153, leaving the definition of statutory terms to be proved or disproved in every case "would lead to great uncertainty in the administration of justice." (*Id.* at p. 158.) Second, it is the duty of the trial judge to instruct the jurors on the general principles of law pertinent to the case (*People* v. *Daniels* (1991) 52 Cal.3d 815, 885 [277 Cal.Rptr. 122, 802 P.2d 906]); therefore the jury has no need for such opinion evidence from the witness. As Wigmore explains, "The exclusion of testimonial opinion rests here on a ground slightly different from that of all the other instances. The general principle . . . is exemplified, to be sure, that the tribunal does not need the witness' judgment and hence will insist on dispensing with it. But here it is not that the *jury* can of themselves determine equally well; it is that the *judge* (or the jury as instructed by the judge) can determine equally well. The principle is the same; but the peculiarity is that a different member of the tribunal is relied upon as equipped with the data. It is not the common knowledge of the jury which renders the witness' opinion unnecessary, but the special legal knowledge of the judge." (7 Wigmore on Evidence (1978) § 1952, p. 103, italics in original, fn. omitted.)[2]

 In the present case, Officer Thacker's definitions of robbery and extortion were wide of the mark. (See discussion of robbery and extortion, *post*, pp. 49-50.) However, the issue is not whether the witness's definition was substantially correct but whether it was admissible as evidence. (*People* v. *Carroll*, *supra*, 80 Cal. at pp. 157-158.) For the reasons explained above, it is for the court to instruct the jury as to what constitutes an offense, not the witness.

## B. *A Witness May Not Express an Opinion as to the Guilt or Innocence of the Defendant.*

 A consistent line of authority in California as well as other jurisdictions holds a witness cannot express an opinion concerning the guilt or innocence of the defendant. (*People* v. *Brown* (1981) 116 Cal.App.3d 820,

---

[2]We recognize there may be limited circumstances where an expert's testimony will assist the jury, such as where the terms used in the statute are not within the common experience of the ordinary person. This case does not fall within such an exception.

829 [172 Cal.Rptr. 221]; *People* v. *Clay, supra,* 227 Cal.App.2d at pp. 98-99, citing cases.) As explained in *Brown* and *Clay* the reason for employing this rule is not because guilt is the "ultimate issue of fact" to be decided by the jury. Opinion testimony often goes to the ultimate issue in the case. (See *Brown, supra,* 116 Cal.App.3d at pp. 827-828, and cases cited.) Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt.

### C. *A Witness May Not Express an Opinion as to Whether a Crime Has Been Committed.*

█ Although we have found no California case directly on point, we believe the same rationale which prohibits the witness from expressing an opinion on the meaning of statutory terms or the guilt of the defendant also prohibits the witness from expressing an opinion as to whether a crime has been committed.

As discussed above, the rationale for admitting opinion testimony is that it will assist the jury in reaching a conclusion called for by the case. "Where the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates." (*Lampkins* v. *United States* (D.C.App. 1979) 401 A.2d 966, 969 [police officer could not express opinion as to whether a robbery had occurred].) █ There are some crimes a jury could not determine had occurred without the assistance of expert opinion as to an *element* of the crime.[3] Robbery and extortion, however, are not among them. Neither, unfortunately, is "sufficiently beyond common experience" that the jury needs an expert to determine whether they have been committed. The jury clearly was competent to determine from the evidence and the court's instructions whether defendant intended to rob or extort Argueta and Gonzales.

For the reasons set forth above, we conclude it was improper for Officer Thacker to testify as to the meaning of the terms robbery and extortion and

---

[3]For example, in cases charging rape of a person who, through mental disorder, is incapable of giving consent (Pen. Code § 261, subd. (a)(1)), expert testimony is admissible to establish a necessary element of the crime—that the victim was incapable of giving consent due to a mental disorder. (*People* v. *Lewis* (1977) 75 Cal.App.3d 513, 518-519 [142 Cal.Rptr. 218]; *People* v. *Dolly* (1966) 239 Cal.App.2d 143, 145-146 [48 Cal.Rptr. 478].) There are also circumstances in which a police officer's expert testimony on the modus operandi involved in certain crimes may assist the jury to determine a factual issue such as the defendant's intent. (*People* v. *Hardy* (1969) 271 Cal.App.2d 322, 327-328 [76 Cal.Rptr. 557].)

to express the opinion the crimes committed in this case were robberies. Furthermore, under the facts of this case, expressing the opinion the crimes were robberies was tantamount to expressing the opinion defendant was guilty of robbery and the first degree felony murder of Argueta.

We turn now to the question whether failure to object to Thacker's testimony constituted ineffective assistance of counsel and, if so, whether it was prejudicial.

II. *Defense Counsel Was Deficient in Allowing Officer Thacker's Opinion Testimony to Go Unchallenged But This Deficiency Did Not Affect the Outcome of the Trial.*

■ Both the Sixth Amendment of the United States Constitution and article I, section 15, of the California Constitution guarantee a criminal defendant a right to the assistance of counsel. This right encompasses the right to *effective* assistance of counsel, without which the right to a trial itself would be "of little avail." (*Powell v. Alabama* (1932) 287 U.S. 45, 68 [77 L.Ed. 158, 170, 53 S.Ct. 55, 84 A.L.R. 527]; *People v. Ledesma* (1987) 43 Cal.3d 171, 215 [233 Cal.Rptr. 404, 729 P.2d 839].) Effective assistance of counsel means assistance which meets "an objective standard of reasonableness . . . [¶] . . . under prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688 [80 L.Ed.2d 674, 693-694, 104 S.Ct. 2052]; *Ledesma, supra,* 43 Cal.3d at p. 216.)

■ Generally, the failure to make objections is a matter of trial tactics which appellate courts will not second-guess. (*People v. Lanphear* (1980) 26 Cal.3d 814, 828 [163 Cal.Rptr. 601, 608 P.2d 689].) Occasionally, however, a case arises in which there simply could be no satisfactory explanation for counsel not objecting to the proffered evidence. (See, e.g., *People v. Nation* (1980) 26 Cal.3d 169, 179 [161 Cal.Rptr. 299, 604 P.2d 1051] [failure to object to impermissibly suggestive pretrial identifications]; *People v. Sundlee* (1977) 70 Cal.App.3d 477, 482-483 [138 Cal.Rptr. 834] [failure to object to hearsay evidence].)

As we have discussed above, the opinions of Officer Thacker as to the definitions of robbery and extortion, the nature of the crime committed here, and his inferential opinion as to defendant's guilt were all improper. Trial counsel should have objected to the questions asking Thacker to define robbery and extortion for the jury. As to Thacker's volunteered opinion robbery "is what happened in this particular case," counsel should have moved to strike and requested a curative instruction to the jury that they, not

Officer Thacker, must determine what crimes were committed and whether defendant was guilty of those crimes.[4]

We perceive no tactical advantage to defendant in allowing Thacker's testimony to go unchallenged. The People suggest defense counsel may have kept silent because Thacker's testimony was partially favorable to the defense in stating extortion "is happening also." Read in the context of the entire statement, however, (see p. 44, *ante*), Thacker's testimony was that the 18th Street gang engaged in both robbery and extortion but "[robbery] is what happened in this particular case." Whether Argueta was killed in the course of an attempted robbery or an attempted extortion was a crucial issue in this case. A killing in the course of an attempted robbery would constitute a special circumstance and would also support a first degree felony-murder verdict, a killing in the course of an attempted extortion would not support either. Given the importance of the jury's determination on this issue, we cannot believe competent counsel would not object to Thacker's opinions.

In addition to showing counsel's performance was deficient, defendant must also show " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People* v. *Ledesma, supra,* 43 Cal.3d at pp. 217-218, quoting from *Strickland* v. *Washington, supra,* 466 U.S. at p. 695 [80 L.Ed.2d at p. 698].) As we explain below, the properly admitted evidence supported every element of attempted robbery. Therefore, we conclude defendant has failed to meet the burden of establishing his counsel's failure to challenge Thacker's improper opinion testimony affected the outcome of the trial.

Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear. (Pen. Code, § 211.) Extortion is defined in relevant part as "the obtaining of property from another, with his consent, . . . induced by a wrongful use of force or fear . . . ." (Pen. Code, § 518.)

---

[4]We find no prosecutor misconduct in this case. Defense counsel asked Thacker on cross-examination if he would describe "collecting rent" as extortion, to which Thacker answered, "Not entirely, no." The prosecutor's question to Thacker asking how he would describe "collecting rent" came just moments later on redirect. Clearly, the prosecutor could not have planned this line of questioning in advance. (Cf. *People* v. *Bentley* (1955) 131 Cal.App.2d 687, 690 [281 P.2d 1].) Rather, he saw an unexpected opportunity and took it. We cannot fault the prosecutor for following the cross-examination with such an obvious question on redirect, especially when it came on the heels of the cross-examination without the opportunity to reflect on the legal issues lurking in the question. Furthermore, even if the question constituted misconduct, defense counsel failed to object or ask for a curative instruction. (See *People* v. *Carrera* (1989) 49 Cal.3d 291, 321 [261 Cal.Rptr. 348, 777 P.2d 121].) Thus we come full circle to the issue of ineffective assistance of counsel.

██ "The crime of extortion is related to and sometimes difficult to distinguish from the crime of robbery." (*People* v. *Hesslink* (1985) 167 Cal.App.3d 781, 790 [213 Cal.Rptr. 465].) Both crimes have their roots in the common law crime of larceny.[5] Both crimes share the element of an acquisition by means of force or fear. One distinction between robbery and extortion frequently noted by courts and commentators is that in robbery property is taken from another by force or fear "against his will" while in extortion property is taken from another by force or fear "with his consent."[6] The two crimes, however, have other distinctions. Robbery requires a "felonious taking" which means a specific intent to permanently deprive the victim of the property. (*People* v. *Ford* (1964) 60 Cal.2d 772, 792 [36 Cal.Rptr. 620, 388 P.2d 892].) Robbery also requires the property be taken from the victim's "person or immediate presence." (Pen. Code, § 211.) Extortion does not require proof of either of these elements. (*People* v. *Peck* (1919) 43 Cal.App. 638, 645 [185 P. 88] [defendant convicted of extortion even though the property was to be returned to the victim]; (*People* v. *Cadman* (1881) 57 Cal. 562, 563 [threat to expose victim to disgrace unless he dropped an appeal constituted intent to extort property]; *People* v. *Hopkins* (1951) 105 Cal.App.2d 708, 709 [233 P.2d 948] [based on defendant's threats, victim went to bank, withdrew money, and gave it to defendant].) Extortion does, however, require the specific intent of inducing the victim to consent to part with his or her property. (*People* v. *Hesslink, supra,* 167 Cal.App.3d at p. 789.)

██ An attempt to commit a crime requires a specific intent to commit the crime and a direct but ineffectual act done toward its commission. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 452-453 [194 Cal.Rptr. 390, 668 P.2d 697] [felony murder based on attempted robbery].)

Here, the undisputed evidence showed defendant was a collector of "rent" for the 18th Street gang and his territory included the area where Argueta and Gonzales lived.

In the afternoon of March 21st, defendant approached Argueta as he was getting into a car with some friends and asked him for money. Argueta responded he had no money and told defendant, "You come back later, 'cause I'm leaving." Defendant said, "You are not giving me any money

---

[5]Note, *A Rationale of the Law of Aggravated Theft* (1954) 54 Colum. L.Rev. 84, 84.

[6]The paradox of a taking which is both consensual *and* the result of force or fear has been the subject of numerous court decisions and commentaries. (See, e.g., *People* v. *Peck* (1919) 43 Cal.App. 638, 645 [185 P. 881]; Perkins & Boyce, Criminal Law *supra,* at p. 451; Note, *Rationale of the Law of Aggravated Theft, supra,* 54 Colum. L.Rev. at pp. 85-86; LaFave & Scott, Handbook on Criminal Law (1972) 707.)

then? Well, if you are not giving me any money you will see." Defendant did not attempt to prevent Argueta from leaving.

Later that evening, defendant approached a group of men standing on a street corner. Defendant told the men he was collecting money for the 18th Street gang. Angry words were exchanged. Defendant forced the men up against a wall and began hitting one of the men with a gun. Defendant demanded $40 from each man then increased his demand to $200. He told the men he wanted the money that night. The men told defendant they had no money. Defendant told the men he did not believe they had no money because he knew they were selling marijuana.

While this confrontation was taking place, Jose Gonzales walked by on the way to move his car. Defendant pointed his gun at Gonzales and ordered him up against the wall with the other men. Gonzales testified, "[Defendant] asked me about money" and he replied he had no money. Defendant then asked Gonzales what he was doing there to which Gonzales responded he was going to move his car. Defendant ran his hands over Gonzales's pockets but did not put them inside Gonzales's pockets. Gonzales was then told by defendant to stay there against the wall.

At this point, Argueta approached the street corner where defendant, Gonzales and the other men were standing. Defendant stopped Argueta and asked him, "Where is the money?" Argueta denied having any money and told defendant, "It is late. Come back, [I] will give you some." Defendant, still holding a gun, began pushing Argueta. Defendant told Argueta this was "not a game" and that he wanted the money "now." Defendant then grabbed Argueta by the hair and put his gun to Argueta's head. Defendant told Argueta, "Just give me [the money] now or I put your brains out." Argueta replied, "Go ahead if you want." Defendant then shot Argueta in the head at point-blank range and fled.

The evidence described above satisfies all the elements of an attempted robbery of Argueta and Gonzales.

There can be no doubt defendant intended to permanently deprive Argueta and Gonzales of their property.

The intent to take property from Argueta's person is shown by the fact that, unlike their confrontation earlier in the day, this time defendant did not accept Argueta's statement he would give the defendant money later. Defendant told Argueta he was not playing games and to give him the money "now" or "I [blow] your brains out." To emphasize his point defendant grabbed

Argueta by the hair and placed a gun to his head.[7] This evidence also establishes defendant's intent to take Argueta's money by force or fear against his will. At the same time, this evidence negates the specific intent to obtain Argueta's money through consent, a necessary element of extortion.

The intent to take property from Gonzales's person is demonstrated by the fact defendant stopped Gonzales at gunpoint and indicated he wanted money from Gonzales. When Gonzales stated he had no money defendant patted Gonzales's pockets while continuing to train his gun on Gonzales, thereby demonstrating an intent to take Gonzales's money through force against his will rather than with his consent induced by fear. Defendant argues Gonzales was treated the same as the other men from whom defendant was attempting to extort money when Gonzales appeared on the scene and therefore the jury could have concluded defendant was attempting to extort money from Gonzales too. We do not necessarily agree defendant's conduct toward the other men was attempted extortion but even if it was defendant did not treat Gonzales the same as the other men. Defendant did not demand a specific amount of "rent" money from Gonzales, as he did with the other men, and defendant patted Gonzales's pockets for money, which he did not do with the other men.

Our harmless error analysis in this case is analogous to that employed in cases challenging the failure to give a lesser-included-offense instruction. Those cases hold an instruction on a lesser included offense is only appropriate "when the evidence raises a question as to whether all the elements of the charged offense were present . . . but not where there is no evidence that the offense was less than charged." (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-324 [185 Cal.Rptr. 436, 650 P.2d 311], (citation omitted).) Here, the evidence supported a finding on all the elements of robbery and negated a necessary element of extortion. Therefore, we do not believe the jury could reasonably have reached any other conclusion than defendant's acts constituted attempted robbery of Argueta and Gonzales.[8]

---

[7]A distinction traditionally drawn between robbery and extortion is that a person commits robbery when he threatens immediate harm to the victim whereas he commits extortion when he threatens future harm to the victim. (Lindgren, *Unraveling the Paradox of Blackmail, supra,* 84 Colum. L.Rev. at p. 673, fn. 15; and see *People* v. *Hopkins, supra,* 105 Cal.App.2d at p. 709 [defendant told victim unless he gave defendant money he would be "bumped off" by "gangsters from Chicago"; conviction of extortion affirmed].) Here, defendant threatened Argueta with immediate harm in contrast to the incident earlier in the day in which he threatened Argueta with future harm, telling him if he did not pay money to defendant, "[Y]ou will see."

[8]For these same reasons we reject defendant's argument the court erred in refusing his request for a lesser-included-offense instruction on attempted extortion as to Gonzales.

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied April 17, 1995, and appellant's petition for review by the Supreme Court was denied June 15, 1995.