Filed 6/24/13  P. v. Smith CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>COLEMAN KENYATTA SMITH,<br><br>    Defendant and Appellant. | B240264<br><br>(Los Angeles County<br>Super. Ct. No. TA119283) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Pat Connolly, Judge.  Modified and, as so modified, affirmed.

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General,  Steven D. Matthews and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Coleman Kenyatta Smith appeals the judgment entered following his conviction by jury of first degree murder in which he personally discharged a firearm causing death. (Pen. Code, §§ 187, subd. (a), 12022.53, subd. (d).) The trial court found Smith had a prior serious felony conviction within the meaning of Penal Code section 667, subdivision (a) and sentenced him to a term of 55 years to life in state prison.

Smith contends the prosecutor engaged in prejudicial misconduct during argument and defense counsel rendered ineffective assistance in failing to object. We reject these contentions but modify the judgment to reflect imposition of a five-year enhancement pursuant to Penal Code section 667, subdivision (a), rather than section 667.5, subdivision (a). As so modified, the judgment is affirmed.

## BACKGROUND

1. *The evidence adduced at trial.*

On the evening of July 25, 2011, Duncan Tasevski drove fellow gang members Smith, Gary Sanders and another individual to Smith's home on East 87th Place in Los Angeles. Tasevski had known Smith for a few years but was best friends with Sanders. Smith had a bag of clothes when he entered the car. Upon arrival at Smith's residence, Smith and Sanders exited the car. Tasevski remained in the car texting on his phone. He heard two or three gunshots and saw muzzle flash, then saw Smith returning to the car with a dark object in his hand. Smith appeared "frantic" and "wired up." In fear for his life, Tasevski drove from the scene as Smith arrived at the car.

At the time of the shooting, Smith's mother, Annette Saxton, Smith's 12-year-old daughter Keynia Smith, and Keynia's mother Kalita Lucas, were in Smith's residence. They went outside and saw Sanders slumped against a fence. Saxton testified she has known Sanders "for a long time" and considered him "like my son." Sanders asked for help, repeatedly said he was dying and told Saxton, " 'Your son shot me.' " While Sanders remained in the front of the residence, Keynia and Lucas saw Smith come from the rear of the building and

2

enter the residence. Keynia saw him leave shortly thereafter. The .38-caliber revolver used in the shooting and a bag of clothing were found in a trash can on the side of the building from which Smith emerged after the shooting.

Keynia testified she opened the door during the shooting. She did not see the shooter's face but described the shooter as light-skinned, tall, slender male with short, wavy hair, which described Tasevski.

Sanders was taken to California Hospital where he died of gunshot wounds.

Jose Ramirez lives across the street from California Hospital. In the early morning hours after the shooting, Ramirez was awakened by screaming. Ramirez looked outside and saw three men hitting, kicking and stomping Smith while several others watched. The men punched Smith more than 15 times, knocked him to the ground and stomped him with their feet. They ceased the attack and went to the entrance of the hospital but returned and "continued punching him." Smith was hospitalized as a result of the attack but refused to discuss the assault with police officers.

Tasevski testified he alone attacked Smith outside the hospital.

Two DNA samples were obtained from the weapon used in the shooting. One sample was too small to render a profile. The other sample was matched to Smith's fellow gang member, Darrell Jones. Jones testified at trial he was not involved in the shooting but he may have handled the gun as guns frequently are passed among gang members. Jones has a tattoo dedicated to Sanders's memory and, after Sanders died, Jones stopped associating with Smith.

Phone records indicated that at 3:06 p.m. on the day of the shooting, Smith sent a text message to his brother stating: "Time to kill some cheese toast," a derogatory term for a member of Smith's gang.

2. *The prosecutor's argument, as relevant to Smith's claim.*

The prosecutor argued the jury reasonably could infer Smith's fellow gang members beat him because Tasevski told them Smith had killed Sanders. The prosecutor asserted: "And we could logically understand why, as [Tasevski had]

just witnessed his best friend being shot by the defendant.  [¶]  And it was obvious that the gang was mad at [Smith] for shooting [Sanders], and they were getting their own street justice . . . ."

Regarding Jones, the prosecutor noted he "has a memorial, a tattoo for [Sanders].  And we asked him, 'Well, do you still associate with the defendant?'  And he said no, obvious.  [¶]  We can logically infer that [Tasevski] told the gang that the defendant was the person responsible for shooting [Sanders]."

Toward the end of rebuttal argument, the prosecutor asserted that, based on the nature of the attack, the jury reasonably could infer the attackers blamed Smith for Sanders's death.  The prosecutor concluded by stating Smith "ends up getting brutally beaten and left in the street outside the hospital" where Sanders died.

Defense counsel did not object to any of these remarks.

### DISCUSSION

1.  *Smith fails to demonstrate prosecutorial misconduct.*

    a.  *Smith's arguments.*

Smith contends the prosecutor urged an improper inference premised on facts not in evidence.  He claims that because the identity of the attackers, other than Tasevski, was unknown, there was no evidence as to their state of mind with respect to Smith's culpability for Sander's death.  Thus, the prosecutor "fictionalize[d] evidence" and committed misconduct in arguing Smith's fellow gang members believed Smith killed Sanders.  The argument also violated the rule prohibiting opinion evidence on the issue of guilt.  (*People v. Torres* (1995) 33 Cal.App.4th 37, 46-47.)

Smith further claims defense counsel rendered ineffective assistance in failing to object to the misconduct.  He argues there was no reasonable explanation for the failure to object, the evidence was not overwhelming, the defense credibly blamed Tasevski for the shooting and the prosecutor's egregious misconduct warrants retrial.

4

b. *Resolution*.

A prosecutor is given wide latitude during argument. (*People v. Hill* (1998) 17 Cal.4th 800, 819, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.) Argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences or deductions drawn from the evidence. (*Ibid.*)

Here, the prosecutor's argument was based on inferences drawn from the evidence. Tasevski knew Smith was with Sanders at the time of the shooting and Smith returned to Tasevski's car immediately after the shooting holding a dark object and looking frantic. As a result of these observations, Tasevski drove from the scene in fear for his life. Later that night, a group of males beat Smith in the parking lot of the hospital where Sanders died. Tasevski admitted beating Smith just hours after the shooting. Ramirez, an unbiased eyewitness, testified several people participated in the beating.

The obvious inference to be drawn from this evidence is that Tasevski told the assailants what he had seen and the group beat Smith in retaliation for the shooting of Sanders. Thus, the prosecutor's argument that Tasevski told other gang members what he had witnessed was a reasonable inference drawn from the evidence. The prosecutor did not commit misconduct in drawing this inference from the evidence.

Smith complains the prosecutor impermissibly relied on the assailants' belief Smith shot Sanders in urging the jury to find Smith was the shooter. Smith claims this argument amounted to inadmissible opinion evidence on the issue of Smith's guilt. This argument fails because the prosecutor's "street justice" argument, in which the prosecutor asserted Smith was beaten because he shot Sanders, was based on the evidence presented at trial and was a permissible inference from the evidence. Thus, the prosecutor properly could argue Tasevski identified Smith as the shooter to other gang members and their conduct thereafter constituted circumstantial evidence of Smith's guilt.

5

Because it is not misconduct "to ask the jury to believe the prosecution's version of events as drawn from the evidence," the prosecutor's argument was proper. (*People v. Huggins* (2006) 38 Cal.4th 175, 207.) Thus, there were no grounds on which counsel could have objected and any objection would have been overruled. (*People v. Cole* (2004) 33 Cal.4th 1158, 1202, fn. 11.)

In any event, because it is not reasonably probable Smith would have achieved a more favorable result absent the argument, Smith is unable to demonstrate ineffective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674].) The evidence of Smith's guilt included Sanders's dying declaration identifying Smith as the shooter and Smith's text message to his brother indicating his intent to kill a member of the gang. Also, Tasevski testified he drove from the scene in fear for his life after the shooting when he saw Smith approaching frantically with a dark object in his hand. Additionally, the murder weapon was found in the trash on the side of the building from which Smith emerged immediately after the shooting. The presence of Jones's DNA on the gun used in the shooting was explained by Jones's testimony that guns are passed among gang members.

In sum, given the evidence of Smith's guilt and the obvious interpretation of the evidence urged by the prosecutor, Smith cannot show prosecutorial misconduct or deficient performance in defense counsel's failure to object. Even without the prosecutor's argument, the jury reasonably would have inferred the beating of Smith corroborated Tasevski's account of the murder. Thus, the claim of prosecutorial misconduct, as well as the assertion defense counsel rendered ineffective assistance, fail.

2. *The abstract of judgment must be corrected*.

The People correctly note the abstract of judgment must be modified to reflect the imposition of a five-year enhancement pursuant to Penal Code section 667, subdivision (a), rather than section 667.5, subdivision (a). We shall order the requested modification. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

6

## DISPOSITION

The judgment is modified to reflect imposition of a five-year enhancement pursuant to Penal Code section 667, subdivision (a), rather than section 667.5, subdivision (a).  As so modified the judgment is affirmed.  The clerk of the superior court shall prepare and forward an amended abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

KITCHING, J.

7