Filed 10/28/21  P. v. Garcia-Torres CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DANIEL ALBERTO GARCIA-TORRES,<br><br>        Defendant and Appellant. | A160488<br><br>(Sonoma County<br>Super. Ct. No. SCR709336-1) |

A jury convicted Daniel Alberto Garcia-Torres of sexually penetrating his sister-in-law by foreign object while she was unconscious of the nature of the act, and while she was intoxicated and incapable of resisting.  (Pen. Code, § 289, subds. (d), (e).)[1]  The trial court sentenced Garcia-Torres to state prison and, as relevant here, imposed a restitution fine and two court assessments.

Garcia-Torres appeals, raising several claims of error.  We affirm.

### BACKGROUND

#### A.

#### *Prosecution Evidence*

In 2017, Daphne C.C. and Garcia-Torres were married.  They lived in

---

[1] Undesignated statutory references are to the Penal Code.

a house with several members of Daphne's family, including Daphne's 21-year-old sister, Jane Doe. Doe and Garcia-Torres, who was 24, had a "brother/sister like relationship." Garcia-Torres assured Daphne that Doe was "not his type" and "that he saw her as a sister." Doe confirmed that Garcia-Torres treated her "like a younger sister." She had no romantic feelings for Garcia-Torres. Doe never flirted with Garcia-Torres, touched him affectionately, or kissed him. In the summer of 2017, Doe had a boyfriend.

### 1. August 2017 Incident

On a late August 2017 evening, Doe, her boyfriend, and Garcia-Torres were in the garage of the family house repairing Doe's boyfriend's car. Daphne was at the house but not in the garage. Over the course of the evening, Garcia-Torres "kept giving [Doe] beers to drink." Doe drank the beers. She also drank a cocktail Garcia-Torres made for her. Later that evening, Doe used the restroom in the house because she "wasn't feeling too good." Then she rested on the couch with her boyfriend. Later, Garcia-Torres grabbed Doe from the couch and told her they needed to finish working on the car. Doe's last memory of the evening was "having a sip of a beer."

Early the next morning, Daphne awoke and realized Garcia-Torres was not in bed. She went to the garage and found Garcia-Torres asleep next to the car.

### 2. Discovery of Photographs and Videos

By October 2017, Daphne's marriage had deteriorated in part because she suspected Garcia-Torres of being unfaithful. On an evening in late October, Daphne accused Garcia-Torres of cheating on her. In response, Garcia-Torres threw his phone at Daphne and told her to look through it.

Daphne looked through the "drafts" folder of Garcia-Torres's email and saw a picture and video of Doe. In the video, Doe was "passed out" in the garage and Garcia-Torres's hands were "going down to her shorts, fondling her vagina." Doe "appeared to be unconscious because she was not responding." Daphne recognized Garcia-Torres's hands as he had a noticeable scar on his right hand.

Daphne "couldn't believe what [she] had found." She confronted Garcia-Torres. In response, he became "really aggressive." Daphne hid from Garcia-Torres; then she and her mother went to Doe's bedroom and showed her a portion of the video. Doe told her family that she had not given Garcia-Torres permission to take the video or touch her body. Doe had no recollection of the video being taken.

Doe's mother told Garcia-Torres to leave the house, and he did. Early the next morning, Doe's family went to the police station with the phone.

### 3. Police Investigation

When Santa Rosa Police Officer Tom Bohanan arrived at the police station to take a report of a possible sexual assault, Doe was there with her family. Garcia-Torres was there too. Garcia-Torres blurted out: " 'I guess I photographed my sister-in-law, . . . I don't recall if it — when it happened, it's on there.' " When Bohanan asked Garcia-Torres why he came to the police station, Garcia-Torres explained, " 'I figured I'd turn myself in.' "

Bohanan interviewed Daphne and watched the video on Garcia-Torres's phone. According to Bohanan, the video showed Doe unconscious and snoring on the garage floor with "her shirt lifted up exposing her bare breasts." The camera panned over Doe's body; then a male hand pulled down her pants and penetrated her vagina. Bohanan also interviewed Doe. She said she did not recall the incident depicted in the video because she was probably

3

" 'intoxicated.' " Doe, however, thought the video might have been taken on the evening that she, her boyfriend, and Garcia-Torres worked on her boyfriend's car in the garage of the family's house. In another police interview, Doe said her last memory of the evening was Garcia-Torres telling her to drink beer. Doe denied giving Garcia-Torres permission to take the video.

Santa Rosa Detective Timothy Raymond advised Garcia-Torres of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 and interviewed him. Garcia-Torres acknowledged having marital problems but denied cheating on Daphne. He recounted the evening that he, Doe, and Doe's boyfriend worked on Doe's boyfriend's car. Everyone, including Doe, was drunk. Garcia-Torres woke up the next morning on the garage floor.

Initially, Garcia-Torres claimed he did not remember taking the video of Doe; he also denied having romantic feelings for Doe or engaging in a sexual relationship with her. Garcia-Torres told Raymond the video made him feel "[s]ick." Eventually, Garcia-Torres acknowledged that he could have taken the video, but he could not explain why he "did it." Garcia-Torres admitted saving the video in a place where he "figured [Daphne] wouldn't look" and acknowledged having "a couple pictures" of Doe on his phone.

A search of Garcia-Torres's cell phone revealed additional videos: one recorded in June 2017 and six recorded in August 2017. As described by Raymond, the June video "appeared to depict . . . another felony sexual assault" of Doe. She was on a bathroom floor, "snoring while the assault was occurring." The "nature of the sexual assault was different in that . . . [it] wasn't digital penetration of [Doe's] vagina, but it was felony sexual assault." The remaining six videos, according to Raymond, "depicted the sexual assault of [Doe] . . . that took place in the garage" in August 2017.

4

Additional photographs of Doe's breasts and vagina, and pictures taken up Doe's skirt showing her crotch, were also found on the phone.[2] Raymond testified that some of the photographs depicted the June 2017 "sexual assault."

## B.

### *Defense Evidence*

Garcia-Torres's sister testified Doe and Garcia-Torres got a "little touchy" on occasion. Garcia-Torres's father recalled seeing his son walk arm in arm with Doe; he also saw Doe rest her head on Garcia-Torres's shoulder.

Garcia-Torres testified he began a sexual relationship with Doe in February 2017. They had consensual sexual intercourse five or six times between February and June 2017. Other times — such as in June 2017 — Garcia-Torres touched Doe's breasts.

According to Garcia-Torres, Doe was sober and awake when he took the June and August 2017 videos. It was Doe's idea to pretend to be asleep while Garcia-Torres touched her: she thought it would be a fun "experiment." She agreed to let Garcia-Torres take the photographs and videos. To Doe, the videos were "foreplay," and she appreciated the "attention" associated with being recorded. According to Garcia-Torres, pretending to be "passed out" gave Doe "an out" if the images were discovered. He acknowledged taking the "up skirt" photos without Doe's permission.

Garcia-Torres described the August 2017 evening when he, Doe, and Doe's boyfriend repaired Doe's boyfriend's car. After her boyfriend left, Doe came into the garage, got underneath the car with Garcia-Torres, and suggested they have sexual intercourse. She also suggested they take a video

---

[2] Doe described the August 2017 video. The court admitted the photographs and videos found on Garcia-Torres's phone into evidence and played the videos for the jury.

for "foreplay" purposes where she would pretend to be asleep. Garcia-Torres took the video. Then he and Doe had sexual intercourse underneath the car. Afterward, Doe got up, got dressed, and went inside the house. Garcia-Torres had not seen Doe drinking that evening; she did not seem drunk.

Garcia-Torres did not tell his family — or the police — that Doe was a consenting participant because it was "not [his] place to say." According to Garcia-Torres, it was Doe's obligation to tell the truth.

## C.

### *Verdict and Sentence*

In 2020, a jury convicted Garcia-Torres of two counts of sexually penetrating Doe by foreign object while she was unconscious of the nature of the act (§ 289, subd. (d)) and two counts of sexually penetrating Doe by foreign object while she was intoxicated and incapable of resisting (§ 289, subd. (e)). The court sentenced Garcia-Torres to eight years in state prison and, as relevant here, ordered him to pay a $300 restitution fine (§ 1202.4, subd. (b)); a $40 court operations assessment (§ 1465.8); and a $30 criminal conviction assessment (Gov. Code, § 70373, collectively, court assessments).

## DISCUSSION

## I.

### Admission of Improper Opinion Testimony

Garcia-Torres claims the court erred by allowing Detective Raymond to testify the videos and photographs "depicted sexual assault," and that trial counsel rendered ineffective assistance by failing to object to the testimony.

We assume for the sake of argument Raymond offered improper opinion testimony when he briefly testified the videos and photographs depicted "sexual assault." (*People v. Torres* (1995) 33 Cal.App.4th 37, 45–47 [witness may not opine on the definition of a crime or "whether a crime has

6

been committed"].)  But the admission of Raymond's testimony was not prejudicial.  (*Id.* at p. 52; *People v. Riggs* (2008) 44 Cal.4th 248, 300–301.) The jurors reviewed the photographs and watched the videos of the June and August incidents:  they were able to assess the evidence to determine whether it depicted sexual assault.  Additionally, the court instructed the jurors that they were not required to accept a witness's opinions as true or correct, and that they could believe all, part, or none of any witness's testimony.  (CALCRIM Nos. 333, 226.)

Importantly, the evidence that Garcia-Torres digitally penetrated Doe in August 2017 for his own sexual gratification while Doe was unconscious of the nature of the act, and intoxicated and incapable of resisting, was overwhelming.  Doe testified she consumed several alcoholic beverages Garcia-Torres gave her, that she was probably " 'intoxicated,' " and that one of her last memories of the evening was Garcia-Torres exhorting her to drink beer.  In describing the August 2017 video, prosecution witnesses characterized Doe as snoring and unresponsive as Garcia-Torres pulled down her pants and digitally penetrated her vagina.  Doe had no recollection of the video being taken:  she did not give Garcia-Torres permission to take the video or touch her body.

The defense case — premised largely on Garcia-Torres's inherently contradictory testimony — was weak.[3]  Thus, there is no reasonable probability Garcia-Torres would have received a more favorable outcome had trial counsel objected to Raymond's brief characterization of the incidents, and had the court excluded his testimony.  (*People v. Riggs, supra,* 44 Cal.4th at pp. 300–301 [jury's exposure to investigating officer's "unsurprising

___

[3] For example, Garcia-Torres's testimony that Doe was a sober and willing participant during the August 2017 incident was belied by his admission to Detective Raymond that Doe was drunk during the incident.

7

opinions" that the defendant committed the crimes "could not have influenced the verdict . . . in light of the overwhelming evidence against defendant"].)

This conclusion also forecloses Garcia-Torres's ineffective assistance of counsel claim. To prove ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and that the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688.) When " 'a defendant has failed to show that the challenged actions of counsel were prejudicial, a reviewing court may reject the claim on that ground without determining whether counsel's performance was deficient.' " (*People v. Weaver* (2001) 26 Cal.4th 876, 961.) We take that approach here, as Garcia-Torres has failed to demonstrate prejudice. (*Id.* at pp. 961–962 [trial counsel's failure to object to witnesses' testimony was not prejudicial].)

## II.

### Failure to Instruct on Battery as a Lesser Included Offense

Garcia-Torres asserts the court erred by failing to sua sponte instruct the jury on battery as a lesser included offense of sexual penetration by foreign object.[4]

A trial court has a sua sponte duty to instruct the jury " 'on a lesser offense necessarily included in the charged offense *if there is substantial evidence the defendant is guilty only of the lesser.'* " (*People v. Shockley* (2013) 58 Cal.4th 400, 403–404, italics added.) " '[T]he existence of "*any* evidence,

---

[4] " 'Sexual penetration' " is "the act of causing the penetration, however slight, of the genital . . . opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object." (§ 289, subd. (k)(1).) " 'Foreign object' " includes "any part of the body, except a sexual organ." (*Id.*, subd. (k)(2).) Battery "is any willful and unlawful use of force or violence upon the person of another." (§ 242.)

no matter how weak," will not justify instructions on a lesser included offense.' " (*People v. DePriest* (2007) 42 Cal.4th 1, 50.)

We assume without deciding that battery is a lesser included offense of sexual penetration by foreign object. (*People v. Miranda* (2021) 62 Cal.App.5th 162, 172 (*Miranda*), review granted June 16, 2021, S268384; CALCRIM Nos. 1047, 1048.) We nonetheless conclude the trial court was correct not to instruct on battery because no reasonable jury could conclude Garcia-Torres committed battery but not sexual penetration by a foreign object. (*People v. Booker* (2011) 51 Cal.4th 141, 181–183.) The evidence that Garcia-Torres digitally penetrated Doe's vagina for the purpose of sexual arousal or gratification was uncontroverted. (§ 289, subd. (k)(1).) And the evidence that Doe was unconscious of the nature of the act and prevented from resisting by an intoxicating substance — and that Garcia-Torres knew or should have known these facts — was overwhelming. (*Id.*, subds. (d), (e).) Garcia-Torres's testimony to the contrary was implausible, and the jury rejected a defense premised on an actual and reasonable belief that Doe was capable of consenting. (See CALCRIM No. 1047; *Miranda*, *supra*, at p. 178 [lesser included instruction on battery not required where no reasonable jury would find the defendant committed only battery and not rape of an unconscious person].)

For the same reason, even if the trial court erred by failing to give the battery instruction, any error was not prejudicial. (*People v. Breverman* (1998) 19 Cal.4th 142, 177–178, abrogated on another ground by amendment to section 189; *People v. Watson* (1956) 46 Cal.2d 818, 836.) On this record, it is not reasonably probable Garcia-Torres would have received a better result had the court instructed on battery. (*People v. King* (2010) 183 Cal.App.4th 1281, 1319 [failure to give sexual battery instruction was harmless in light of

"overwhelming" evidence against the defendant]; *People v. Thomas* (2007) 146 Cal.App.4th 1278, 1293–1294 [assumed error in not instructing the jury on battery was not prejudicial], disapproved on another point as stated in *People v. Shockley*, *supra*, 58 Cal.4th at p. 406.)

Garcia-Torres's reliance on *Miranda, supra*, 62 Cal.App.5th 162, review granted June 16, 2021, S268384, is unavailing. There, a jury convicted the defendant of, among other things, oral copulation of an unconscious person. (*Id*. at pp. 171–172.) On appeal, the defendant argued the trial court's failure to instruct the jury on battery as a lesser included offense was prejudicial because the only evidence supporting the unconsciousness element — the victim's testimony — was equivocal. (*Id*. at pp. 167, 178–179.) The *Miranda* court agreed, holding it was reasonably probable the jury would have convicted the defendant of battery had that instruction been given. (*Ibid*.)

Here, by contrast, Doe's testimony — corroborated by the testimony of other prosecution witnesses and the August 2017 photographs and videos — clearly and unequivocally established Doe was unconscious, intoxicated, and incapable of resisting when Garcia-Torres sexually assaulted her. Unlike *Miranda*, there is no substantial evidence that Garcia-Torres was guilty of only the lesser, but not the greater offense; nor is there a reasonable probability that instructing the jury on battery would have resulted in a more favorable outcome for Garcia-Torres.

## III.

### Restitution Fine and Court Assessments

When a defendant is convicted of a felony, the trial court must impose a restitution fine ranging from $300 to $10,000 unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. (§ 1202.4, subd. (b)(1).) A defendant's inability to pay "may be considered

only in increasing the amount of the restitution fine in excess of the minimum." (*Id.*, subd. (c); *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.) The court assessments (§ 1465.8; Gov. Code, § 70373) are mandatory. (*People v. Woods* (2010) 191 Cal.App.4th 269, 272; *Frandsen*, at p. 1154.)

Garcia-Torres contends the court erred by imposing a restitution fine of $300 and court assessments of $70 without considering his ability to pay. This argument is not cognizable on appeal because trial counsel failed to object to the imposition of the fine and assessments at sentencing.[5] (*People v. Aguilar* (2015) 60 Cal.4th 862, 864 ["the appellate forfeiture rule applies to challenges to fees imposed at sentencing"]; *People v. Jenkins* (2019) 40 Cal.App.5th 30, 40–41.)

We reject Garcia-Torres's cursory assertion that trial counsel was ineffective for failing to raise the ability-to-pay issue. Garcia-Torres was employed before the incident leading to his incarceration, and he had more than $5,000 in his inmate account in the months preceding his sentencing. On this record, counsel's failure to request an ability-to-pay hearing caused no prejudice because Garcia-Torres had "the ability to pay the amounts ordered." (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061, 1076; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139.)

## DISPOSITION

The judgment is affirmed.

---

[5] The California Supreme Court is considering whether a trial court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments, and if so, which party bears the burden of proof regarding inability to pay. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

11

_____
Rodriguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Fujisaki, J.

A160488