Filed 4/2/24  P. v. Salinas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. MIGUEL SALINAS, Defendant and Appellant. | D082011 (Super. Ct. No. SCD294753) |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION

The jury convicted Miguel Salinas of eight counts of various offenses, including assault with a deadly weapon, burglary, and carjacking, based on

incidents occurring on May 19, 2022.  The jury also found true a multitude of special allegations relating to the eight counts.  The court sentenced Salinas to prison for two terms of life with the possibility of parole, plus an additional 17 years and eight months.

Salinas appeals but only challenges the judgment as to two counts: attempted criminal threat (Pen. Code, §§ 664, 422; count 1) and kidnap for extortion (§ 209, subd. (a); count 8).  He contends (1) the court prejudicially erred by failing to instruct the jury on an essential element of attempted criminal threat and (2) his conviction for kidnap for extortion is not supported by substantial evidence.  Resolving this matter by memorandum opinion (see generally *People v. Garcia* (2002) 97 Cal.App.4th 847, 851-854), we disagree with Salinas and thus affirm.

## I.

The crime of attempted criminal threat consists of three elements: (1) the defendant took a direct but ineffective step toward communicating a criminal threat; (2) the defendant intended to make a criminal threat; and (3) the intended criminal threat was sufficient under the circumstances to cause a reasonable person to be in sustained fear.  (*People v. Chandler* (2014) 60 Cal.4th 508, 525 (*Chandler*).)  We agree with the parties that the trial court erred by failing to instruct the jury as to the third required element. (See *People v. Jackson* (2009) 178 Cal.App.4th 590, 595 (*Jackson*).)  Salinas contends this error was prejudicial, while the People maintain it was harmless beyond a reasonable doubt.  We agree with the People.

To determine whether the error was harmless, we review the circumstances of the case to determine whether "no reasonable juror could have failed to find defendant's threats sufficient under the circumstances to cause a reasonable person to be in sustained fear."  (*Chandler*, *supra*,

60 Cal.4th at p. 525.)  For example, in *Chandler*, the defendant made explicit threats to two victims.  (*Id.* at pp. 511-512.)  He lived around the corner from the first victim, called her profane names, reminded her that she lived alone, and threw tennis balls at the windows of her house and a pipe at her front door.  (*Id.* at p. 511.)  Also, the first victim once saw the defendant walking up the street holding " 'an object' " while threatening to kill her.  (*Id.* at pp. 511-512.)  The second victim walked out of her house to see the defendant walking up the street swinging a golf club while threatening her.  (*Id.* at p. 512.)  The California Supreme Court noted the defendant made explicit threats that he was going to kill the victims "while face-to-face . . . on the street where the victims lived."  (*Id.* at p. 526.)  Although the trial court failed to instruct the jury regarding the third element of attempted criminal threat, our high court determined the defendant's "threats were sufficient under the circumstances to cause a reasonable person to be in sustained fear," and "no reasonable juror could have concluded otherwise."  (*Ibid.*)

In contrast, in *Jackson*, the defendant made threats to blow the victims' heads off and to chop their heads off.  The victims called the police and waited inside the house while the defendant sat down outside.  (*Jackson*, *supra*, 178 Cal.App.4th at p. 594.)  "[T]he jury was not instructed to consider whether the intended threat reasonably could have caused sustained fear under the circumstances."  (*Id.* at p. 599.)  "[T]he jury might have concluded, since [the victims] were safely inside the house with a telephone to call the police while defendant sat out front, or since defendant's threats were so outlandish, that defendant's statements could not reasonably have caused the victims to suffer sustained fear."  (*Id.* at p. 600.)  Under these circumstances, the California Supreme Court concluded there was "nothing in the record upon which to find the verdict was actually based on a valid ground."  (*Ibid.*)

3

The instant matter is more like *Chandler* than *Jackson*. Unlike *Jackson*, where the victims were safe inside their home, here there was no barrier between Salinas and Barry Y. At one point, Salinas was about three feet from Barry Y. and then took a step back and said, " 'I'll cut you' " while displaying a three-inch knife. In addition, Barry Y. testified that Salinas sounded angry and upset, held the knife with the blade extended throughout their encounter, and evidenced the ability to immediately carry out his threat. Also, the jury convicted Salinas of assaulting Barry Y. with a deadly weapon (§ 245, subd. (a)(1); count 2) indicating that the jurors believed Salinas was close enough to Barry Y. to strike him with the knife. Against this backdrop, we conclude the error was harmless beyond a reasonable doubt because "no reasonable juror could have failed to find defendant's threats sufficient under the circumstances to cause a reasonable person to be in sustained fear." (*Chandler*, *supra*, 60 Cal.4th at p. 525.)

## II.

Salinas next argues that substantial evidence does not support his conviction for kidnapping for extortion (count 8) involving Gary R. We disagree.

In reviewing Salinas' substantial evidence challenge, we review the entire record in the light most favorable to the jury's verdicts to determine whether it discloses evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Abilez* (2007) 41 Cal.4th 472, 504.) "We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.) We reverse for insufficient evidence only where it clearly appears that upon "no hypothesis" is there sufficient evidence to support a conviction.

4

(*People v. Ewing* (2016) 244 Cal.App.4th 359, 371.)  Given our limited role on appeal, a defendant bears "an enormous burden" to establish there is insufficient evidence to sustain his or her convictions.  (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.)  Applying these principles, we conclude substantial evidence supports Salinas' conviction for kidnapping for extortion.

"[T]he crime of extortion is related to the offense of robbery."  (*People v. Kozlowski* (2002) 96 Cal.App.4th 853, 866.)  "Both offenses . . . share a common element—acquisition by means of force or fear."  (*Ibid.*)  However, "[t]he two crimes are distinguishable" because "in an extortion, the property is taken with the victim's consent, while in a robbery, the property is taken against the victim's will."  (*Ibid.*)  Robbery requires (1) "a specific intent to permanently deprive the victim of the property" and (2) "the property be taken from the victim's 'person or immediate presence.' "  (*People v. Torres* (1995) 33 Cal.App.4th 37, 50 (*Torres* ); § 211.)  Extortion, on the other hand, "require[s] the specific intent of inducing the victim to consent to part with his or her property."  (*Torres*, at p. 50.)  The consent may be induced by the wrongful use of force or fear.  (§ 518, subd. (a).)

In arguing substantial evidence does not support his conviction under count 8, Salinas relies on *Torres* and its interpretation of what constitutes a robbery.  There, the defendant was a " 'rent' " collector for a gang in Los Angeles.  (*Torres*, *supra*, 33 Cal.App.4th at p. 42.)  One night, the defendant committed two crimes: (1) he shot and killed a drug dealer that he was trying to collect money from, and (2) he attempted to obtain money at gunpoint from a passerby.  (*Ibid.*)  During the defendant's trial, a police officer testifying as the prosecution's expert witness was asked if collecting " ' "rent" ' " is extortion and if he could describe what he believed constituted the crime of extortion.  (*Id.* at p. 44.)  On appeal, the defendant in part argued his counsel

5

was ineffective by failing to object to this portion of the officer's testimony. (*Id.* at pp. 48-49.)

When analyzing the defendant's ineffective assistance of counsel claim, *Torres* recounted the factual circumstances of the defendant's crimes. When the passerby walked past, the defendant pointed a gun at him, ordered him against the wall, and asked him for money. (*Torres*, *supra*, 33 Cal.App.4th at p. 51.) When the drug dealer walked by, the defendant grabbed him, put a gun to his head, and told him to give him the money or he would " 'put [his] brains out.' " (*Ibid*.) The drug dealer told the defendant to go ahead, and the defendant shot him point-blank in the head. (*Ibid*.)

*Torres* determined the evidence at trial showed the defendant committed attempted robbery of both victims. (*Torres*, *supra*, 33 Cal.App.4th at p. 52.) Concerning the crime committed against the passerby, the court noted the evidence showed the defendant did not have the specific intent to obtain the passerby's money through consent, which is a necessary element of extortion. (*Ibid*.) As to the drug dealer, the court determined that by training his gun on the victim, the defendant demonstrated an intent to take his money through force against his will rather than with his consent induced by fear. (*Ibid*.) Ultimately, the *Torres* court concluded that a jury could not have reasonably reached any conclusion other than that the defendant's acts constituted attempted robbery. (*Ibid*.) Thus, the court held that any error in permitting the officer's testimony was harmless. (*Ibid*.)

*Torres*, however, is distinguishable from the instant matter. Here, there is evidence from which a jury could conclude that Salinas had the specific intent necessary to commit extortion. Salinas, who was in the garage of Gary R.'s house, pulled Gary R. into the garage and shut the door. Then, over a period of 40 minutes, Salinas subjected Gary R. to a variety of threats

6

and violence, including telling Gary R. he would kill him multiple times, brandishing a knife, punching Gary R. in the chest, piercing the top of Gary R.'s head with a knife, and placing Gary R. in a tight headlock. In addition to threatening to harm Gary R., Salinas told Gary R. that he would rape Gary R.'s wife and "go after the rest of [Gary R.'s] family" and "get them . . . afterwards" because Salinas had been around the neighborhood and claimed to know the identity of Gary R.'s family. Given these threats, Gary R. testified that he was worried about his grandsons, wife, and his son's mother in law, who were in the house during the encounter. Indeed, Gary R. admitted that he felt like he had to do whatever was necessary to keep Salinas away from his family. Thus, the evidence proffered at trial showed that Salinas was making threats of future harm to Gary R.'s family if Gary R. did not comply with Salinas' demands.

"A distinction traditionally drawn between robbery and extortion is that a person commits robbery when he threatens immediate harm to the victim whereas he commits extortion when he threatens future harm to the victim." (*Torres, supra*, 33 Cal.App.4th at p. 52, fn. 7.) Here, Salinas' threat to hurt members of Gary R.'s family, who were not in the immediate vicinity, qualifies as a threat of future harm. In addition, after this threat was made, Gary R. consented to give Salinas some of Gary R.'s property, including emptying his pockets containing a cell phone and keys, removing his watch and handing it to Salinas, and removing his clothes and giving them to Salinas. Although Salinas also directly threatened Gary R. during their interaction, it was reasonable for the jury to infer that (1) Salinas' threats to harm Gary R.'s family caused him to consent to part with his property when Salinas asked him to do so, and (2) Salinas intended such a result. To the extent the evidence could support different inferences, "choos[ing] between

7

competing inferences" is "within the province of the jury." (*People v. Williams* (2018) 23 Cal.App.5th 396, 408.)  We therefore conclude substantial evidence supports Salinas' conviction under count 8.

DISPOSITION

The judgment is affirmed.


CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.